IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL G.,<br><br>    **Claimant,**<br><br>  v.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br><br>    **Defendant.** | No. 18 CV 4564<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

Claimant Michael G.[1] ("Claimant") seeks review of the final decision of Respondent Andrew Saul,[2] Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7]. The parties have filed cross-motions for summary judgment [ECF Nos. 9, 23] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). For the reasons discussed below, Claimant's Motion for Summary Judgment [ECF No. 9] is granted in part and the Commissioner's Motion for Summary Judgment [ECF No. 23] is

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), therefore, Andrew Saul is substituted as the named defendant.

denied in part consistent with the below order. This case is hereby remanded to the to the agency for further proceedings.

## PROCEDURAL HISTORY

On September 19, 2014, Claimant filed a Title XVI application for SSI benefits. (R. 237-41). The claim was denied initially and upon reconsideration, after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R. 165-69, 175-79, 180-81). On April 13, 2017, Claimant appeared and testified at a hearing before ALJ Margaret A. Carey. (R. 29-59). The ALJ also heard testimony on that date from vocational expert ("VE") Lee O. Knutson. (R. 59-69).

On September 25, 2017, the ALJ denied Claimant's claim for SSI after considering his limitations. (R. 13-22). In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. § 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the date of his alleged disability onset, February 18, 2011. (R. 16). While Claimant was found to have engaged in some light work after his alleged disability onset date, the ALJ concluded that this work, and the earnings therefrom, fell below the level of substantial gainful activity. (R. 16). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c) and 416.920(c). (R. 16). Specifically, Claimant was diagnosed with rheumatoid arthritis. (R. 16). Although Claimant also alleged a vision impairment, the ALJ concluded there was no evidence to substantiate Claimant's allegation and found it was not medically determinable as defined by 20 C.F.R 416.920(c). (R. 16).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16). Specifically, the ALJ noted that with respect to

Claimant's major joint dysfunction and inflammatory arthritis, there was no evidence that the combined clinical findings from such impairments rose to the level of severity contemplated by listings 1.02 and 14.09. (R. 16).

The ALJ then found Claimant had the residual functional capacity[3] ("RFC") to:

"perform sedentary work as defined by 20 CFR 416.967(a) except that he can only occasionally climb ramps and stairs, and he cannot kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. The claimant must also avoid exposure to extreme cold, vibrations, and workplace hazards, such as moving mechanical parts and unprotected heights. Additionally, he can frequently handle and finger bilaterally but he requires a cane to ambulate." (R. 16).

Based on this RFC, the ALJ found at step four that Claimant had past relevant and unskilled work as a Locker Room Attendant. (R. 20). However, because Claimant's residual functional capacity limited him to less than sedentary work, the ALJ found Claimant could not return to his past work. (R. 20). Finally, at step five, the ALJ concluded that Claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including as an assembler, inspector, or order clerk. (R. 21). The ALJ acknowledged that Claimant had additional limitations that impaired his ability to perform the full range of sedentary work but concluded that Claimant would nevertheless be able to transition to work that exists in significant numbers in the national economy consistent with his residual functional capacity and the VE's recommendation. (R. 20-21).

For the above reasons, at step five, the ALJ found Claimant was not disabled under the Act. (R. 21). The Appeals Council declined to review the matter on June 4, 2018 (R. 1-3), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court.

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also, Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however,

"displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Although Claimant argues four separate points on appeal, his first three arguments all merge into a challenge to the ALJ's determination of Claimant's RFC. Claimant's arguments are therefore more properly framed as addressing two issues. First, whether the ALJ properly weighed medical opinion testimony, as well as Claimant's own statements, in ultimately attempting to support her RFC determination with substantial evidence. Second, whether the ALJ improperly relied on flawed testimony from the VE regarding other work available to Claimant. As to the first argument, the Court finds the ALJ did not develop a full and adequate record with regard to the medical evidence, which ultimately frustrated her ability to weigh Claimant's testimony effectively and to support her RFC with substantial evidence. The Court therefore remands for further proceedings on this point, as explained below. The Court, however, affirms the ALJ's decision to accept the VE's methodology in arriving at numerical estimates of other work available to Claimant in the national economy.

**I.    In Assessing Claimant's RFC, the ALJ Failed to Fully Develop the Record and Did Not Properly Weigh the Medical Opinion Evidence**

The Court first turns to the weight the ALJ afforded to medical opinion evidence in formulating Claimant's RFC. The ALJ, unfortunately, failed to procure a substantive medical source opinion concerning Claimant's functional capacity from Claimant's treating physician, Dr. Rediet Kokebie, in accordance with 20 C.F.R. § 404.1512(b). Therefore, the Court finds that the ALJ did not satisfy her duty to develop a full and fair record and had inadequate information upon which to make a determination as to whether Claimant is disabled. For this reason, the Court remands this case so that the ALJ can contact Claimant's treating physician and provide her with

5

a substantive opportunity to complete a functional capacity evaluation for Claimant or to effectively have that evaluation performed by another medical professional at her request as she apparently intended would occur here, as explained in further detail below.

In evaluating the available medical opinion evidence in this case, the ALJ gave significant weight to the opinions of two state agency consultants, Dr. Teresita Cruz and Dr. H. Ramsey, while assigning little weight to the opinion of Claimant's treating physician, Dr. Rediet Kokebie. Claimant takes greatest issue with the ALJ affording little weight to Dr. Kokebie's opinion. Dr. Kokebie, a rheumatologist, diagnosed Claimant with rheumatoid arthritis prior to Claimant's application date and has been Claimant's treating physician for "many years." (R. 17). Dr. Kokebie's treatment records, as well as a "Treating Physical Residual Functional Capacity Questionnaire" she completed on February 2, 2017, were made part of the record. (R. 806-09). In the questionnaire, Dr. Kokebie provided information on the nature and severity of Claimant's symptoms, as well as her diagnoses of rheumatoid arthritis and iron deficiency anemia. (R. 806). Dr. Kokebie's responses to the questionnaire did not, however, contain any opinion on Claimant's functional limitations. For that information, Dr. Kokebie referenced a "Work Capacity Evaluation" or "Formal Work Capacity Evaluation," which had not yet been completed but which she anticipated would be completed pursuant to her referral to an occupational therapist. (R. 532).

Claimant does not have a copy of any work capacity evaluation completed on or after February 2, 2017, despite his best efforts in calling Mercy Hospital twice to follow up on the missing documentation. (R. 30-32). Nor was the ALJ able to procure such an evaluation through a supplementary records request. (R. 861-63). The consistent response from Mercy Hospital was that it sent Claimant all the medical records it had for him – records that did not contain the Work Capacity Evaluation. (R. 30-32). The only evidence in the record indicating that Claimant actually

was referred for a Work Capacity Evaluation – a note from Dr. Kokebie in Mercy Hospital's records dated February 2, 2017 – indicates that the order for a Work Capacity Evaluation inexplicably had been "discontinued." (R. 532). There is no evidence, aside from Claimant's suggestion that "somebody else" who "wasn't the doctor" completed a functional capacity evaluation, that the evaluation ever took place. (R. 32). Claimant's and the ALJ's ultimately futile efforts to procure the relevant documentation from Mercy Hospital, the hospital's insistence that it had sent Claimant all of his medical records, and the note in the medical records that Dr. Kokebie's referral for a work capacity evaluation had been discontinued certainly suggest that the evaluation does not exist and was never completed as ordered.

During and after the hearing, the ALJ, Claimant, and his attorney proceeded on the assumption that the completed evaluation did in fact exist and they just needed to obtain a record of it. Nobody seems to have noticed that the Mercy Hospital record said the referral for an occupational therapy evaluation had been "discontinued." (R. 532). So no effort was made to contact Dr. Kokebie and let her know that the functional capacity evaluation she intended to have done by an occupational therapist may not have been done. At best, the record is incomplete and unclear as to whether such an evaluation ever occurred.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record. *Gudgel*, 345 F.3d at 470; see 20 C.F.R. § 404.1527(d)(2). The ALJ "may discount a treating physician's medical opinion if it is inconsistent" with the opinion of a consulting physician. *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004). If the ALJ denies a treating physician's opinion controlling weight, however, he still may afford it less evidentiary weight. "Exactly how much weight the ALJ affords depends on a number of factors, such as the

7

length, nature, and extent of the physician and claimant's treatment relationship, see 20 C.F.R. § 404.1527(d)(2)(I)-(ii), whether the physician supported his or her opinions with sufficient explanations, *see id.* § 404.1527(d)(3), and whether the physician specializes in the medical conditions at issue, see id. § 404.1527(d)(5)." *Elder*, 529 F.3d at 415. If the ALJ articulates, at least minimally, her analysis of the evidence so that this Court can follow her reasoning for discounting the treating physician's opinion, her decision will stand. *Anthony G. v. Saul*, 2020 WL 439964, at *6 (N.D. Ill. 2020).

In evaluating a treating physician's opinion and medical evidence as described above, the ALJ has a concurrent duty to develop a full and fair record. *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000). Although the reasoned judgment of the Commissioner will generally be upheld on how much evidence to gather, *Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009), an ALJ's failure fulfill his or her obligation to develop a fulsome record is "good cause" to remand for the gathering of additional evidence. *Smith,* 231 F.3d at 437. Specifically, if the evidence received from a treating physician or other medical source is inadequate to make a determination of disability, those sources must be re-contacted to obtain any readily available additional information. 20 C.F.R. § 404.1512(b). Additional evidence or clarification from a medical source must be sought when there is a conflict or an ambiguity that must be resolved, necessary information is missing, or a report does not appear to be based upon objective evidence. *Id*.

In this case, because Dr. Kokebie did not formulate an opinion regarding Claimant's functional capacity, Claimant's objection is less that the ALJ erred in assigning Dr. Kokebie's "opinion" little weight and more that the ALJ did not fulfill her duty to develop the record. Specifically, Claimant argues that the ALJ erred when she failed to procure or consider the "Work Capacity Evaluation" referenced by Dr. Kokebie in the questionnaire – an evaluation which she

8

apparently intended to stand as her opinion as to Claimant's functional capacity. (R. 807-09). Because the functional capacity evaluation ordered by Dr. Kokebie ultimately appears not to have been completed by the occupational therapist to whom Dr. Kokebie referred Claimant for that purpose, Dr. Kokebie's "opinion," as provided to the ALJ, consisted only of her compilation of treatment notes and other documentation of Claimant's symptoms and medical diagnoses over the years. (R. 806-809) As the ALJ suggested in affording little weight to Dr. Kokebie as Claimant's treating physician, Dr. Kokebie's "opinion," without a functional capacity evaluation, is actually not much of an opinion at all. (R. 19).

      Neither this Court nor the ALJ can say with any degree of certainty whether the evaluation did or did not occur because the evidence in the record is ambiguous on that point. Yet in the face of this ambiguity, it was the ALJ's duty to develop the record more fully and give Claimant's treating physician a substantive opportunity, beyond a rote request for medical records to Mercy Hospital for an evaluation that the record evidence indicates may not exist, to contribute her opinion before the ALJ made her determination on Claimant's disability. Not only is there no evidence that Dr. Kokebie, who arguably is in the best position to evaluate the nature and extent of Claimant's disability, knew the functional capacity evaluation she ordered had not been completed, but the fact that she directed the ALJ to the phantom evaluation when she filled out her own form from the Social Security Administration suggests the opposite. (R. 806-09). This is not a situation in which a treating physician declined to render an opinion, or even refused a request to render an opinion. Rather, the evidence shows that Dr. Kokebie took steps to refer her patient to a specialist for a functional capacity evaluation that never occurred – a functional capacity evaluation that the physician reasonably believed would serve as the medical source of record and assist the ALJ in formulating Claimant's RFC.

In the Court's view, the ALJ's decision to proceed to a final decision without a substantive opinion from Claimant's treating physician, or from the medical source the treating physician intended to perform the operative functional capacity evaluation, impermissibly led the ALJ to freely interpret Claimant's medical records and play the role of doctor. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). There is a strong argument to be made that the ALJ improperly substituted her own, non-professional opinion for that of Dr. Kokebie, especially where the only other medical evidence of record came from two state agency consultants who did not have the opportunity to meet or examine Claimant, and formulated their opinion years before Claimant's hearing. Because the ALJ did not satisfy her burden to develop a full and fair record, the ALJ should re-contact Dr. Kokebie so she can determine whether the functional capacity evaluation she ordered was, in fact, completed. If not, she should give Dr. Kokebie an opportunity to provide a substantive opinion as to Claimant's functional limitations, or to refer Claimant for such an evaluation that will, as Dr. Kokebie intended, serve as a valid medical source opinion in Claimant's proceeding.

The Court acknowledges that it is the Claimant's responsibility in the first instance to present evidence in support of his application for disability benefits. *Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove the claim of disability."). Claimant and his attorney attempted to do so here. The confusion about whether any medical professional completed a functional capacity evaluation for Claimant, however, interfered with his ability to develop the record before the ALJ. Having undertaken an attempt to obtain the functional capacity evaluation that Dr. Kokebie intended to stand as the medical source opinion in this case, the ALJ, in the Court's view, was obligated to follow through on that process by making every reasonable effort to help Claimant

10

obtain medical evidence as crucial as the opinion from Claimant's sole treating physician or her designee. 20 C.F.R. § 404.1512(b).

Finally, to the extent Claimant asserts for the first time in his reply brief that the ALJ had an obligation to obtain an independent medical examination of Claimant and order a functional capacity evaluation from that expert, this argument is waived. *Brown v. Colvin,* 661 F. App'x 894, 895 (7th Cir. 2016) (where Claimant asserted for the first time in his reply brief that his mental impairments and lack of counsel kept him from complying with the administrative review procedures of the Social Security Administration, those arguments were waived) (citing *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund,* 704 F.3d 522, 527 (7th Cir. 2013)). The Court need not, and does not, address that waived argument and this Memorandum Opinion and Order should not be interpreted as decision remanding the case because the ALJ did not obtain an independent medical evaluation of Claimant from a third-party expert. The issue here is whether the ALJ fully developed the record with information from Claimant's own medical sources, not whether there was conflict between medical source opinions such that an independent consultative examination should have occurred. *See generally, Michael B. v. Berryhill,* 2019 WL 2269962, at *8 (N.D. Ill. 2019); 20 C.F.R. §§ 404.1512(b)(2), 404.1519a(a)(2). For the reasons explained above, the Court finds that the ALJ did not do so.

## II. The ALJ's Credibility Assessment of Claimant's Subjective Testimony Must Also be Reevaluated on Remand

Claimant also argues that the ALJ erred when she made an unfavorable credibility determination regarding both Claimant's testimony and a functional capacity report completed by Claimant's mother. However, it is unnecessary for the Court to engage fully with the parties' respective arguments about the ALJ's credibility determination. That determination appears to have been based in large part, if not exclusively, on the ALJ's view that the Claimant's subjective

11

symptom testimony (and his mother's corroboration of that testimony) was inconsistent with the medical evidence of record. That evidence likely will be different on remand after Claimant's treating physician is given the opportunity to provide a substantive medical opinion on her own or through her referral to an occupational therapist. This additional evidence may either bolster, clarify, or detract from the veracity of Claimant's testimony, and that is something the ALJ will need to consider on remand. But the Court would be remiss if it did not point out certain issues it has with the ALJ's credibility determination in this case to the extent that discussion might assist Claimant or the ALJ on remand.

While an ALJ's credibility determination is afforded considerable deference on review and may only be overturned if it is patently wrong, *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010), she must take care to give enough reasons to provide a fair sense of how she assessed Claimant's statements. *Skarbek,* 390 F.3d at 505. The Seventh Circuit has repeatedly allowed a discrepancy between a claimant's allegations and the medical evidence to support a finding that the claimant is exaggerating his symptoms, *Jones v. Astrue,* 623 F.3d 1155, 1161 (7th Cir. 2010), but an ALJ may not discredit a claimant's testimony based on the medical evidence alone. *Thomas v. Colvin,* 745 F.3d 802, 806–07 (7th Cir. 2014); *Bjornson v. Astrue,* 671 F.3d 640, 648 (7th Cir. 2012). That, however, seems to be what the ALJ did in this case when she concluded that "[C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (R. 17). Although the ALJ here makes brief reference to "other evidence" beyond medical records and opinions, her explanation for discounting Claimant's

12

testimony clearly demonstrates a specific focus on the medical evidence. (R. 18) ("the medical evidence of record establishes the existence of the claimant's conditions but does not support the degree of limitation alleged.").

Therefore, on remand, the ALJ should take care to discuss why, for example, medical confirmation that Claimant was experiencing swelling and pain in his joints and hands was inconsistent with the level of pain Claimant testified he was experiencing. (R. 40, 42-43, 49). As the Seventh Circuit has explained:

> "We do not suggest that the absence of verifiable medical evidence of pain is an inadmissible consideration in a disability proceeding. In some cases, pain does have an objectively verifiable source, and if so the administrative law judge may certainly treat this as evidence that the claimant is disabled. And if the presence of objective indicators thus makes a claim more plausible, their absence makes it less so. It would be a mistake to say 'there is no objective medical confirmation of the claimant's pain; therefore the claimant is not in pain.' But it would be entirely sensible to say 'there is no objective medical confirmation, and this reduces my estimate of the probability that the claim is true.'"

*Parker v. Astrue,* 597 F.3d 920, 922-23 (7th Cir. 2010).

The ALJ should also be cognizant on remand not to "merely ignor[e]" certain portions of Claimant's testimony, such as his description of his sit/stand limitations. (R. 44-47). *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). Further, while reviewing daily-living activities is an important part of the ALJ's evaluation of whether "a claimant is exaggerating the effects of her impairments," *Green v. Saul,* 781 F. App'x 522, 526 (7th Cir. 2019), the ALJ should be wary of impermissibly equating Claimant's activities of daily life with his ability to engage in full-time work. S*ee, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). For example, the ALJ noted that Claimant "testified that he needs two hours to get ready in the mornings, but he did not explain why he could not wake up earlier." (R. 18). That, however, does not really address Claimant's testimony that, "it's hard for me to get up in the morning. It's very tough for me to put clothes on and go into the bathroom and wash my face. It's very hard to get into the shower. And once I'm

13

out of the shower, it's hard to, like, put my clothers on, and like sit up and stuff, and I'm always in pain. My knees always swollen, so is my ankles. My hands always swollen. My shoulders are always stiff, and I always have a lot of pain in my back." (R. 42). Instead, the ALJ seems to have addressed this testimony with a non-sequitur: "[Claimant] also stated that he has some difficult bathing and dressing, but he denied needing any reminders for medication or grooming." (R. 18).

Finally, the ALJ must take additional care not to discount Claimant's limitations in performing household activities. For example, in her opinion, the ALJ provided a list of chores or tasks Claimant was able to complete, such as riding public transportation under supervision, managing his finances, or not needing reminders for medication or grooming, but she arguably failed to explain how they undercut Claimant's claims or to consider Claimant's testimony as to his limitations in performing such tasks. (R. 18); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009).

### III. Whether the RFC is Supported by Substantial Evidence Must be Given a Fresh Look on Remand

Claimant's final contention regarding the RFC is that the ALJ's flawed interpretation of medical and other evidence in this case ultimately led to an RFC that did not adequately account for the full extent of Claimant's disability and was not supported by substantial evidence. The RFC is the maximum that a claimant can still do despite his or her mental and physical limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96–8p; *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004) ("The RFC is an assessment of what work-related activities the claimant can perform despite her limitations."). It is based on the medical evidence in the record and other evidence, including testimony by the claimant or the claimant's friends and family. 20 C.F.R. § 404.1545(a)(3). When determining the RFC, the ALJ must consider all medically determinable impairments, even those that are not considered "severe," and must determine which treating and examining doctors' opinions should receive weight and must explain the reasons for that finding. *Id*. § 404.1545(a)(2),

14

(b), (c), § 404.1527(d), (f). To support the RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7. In other words, the ALJ must explain how s/he reached his or her conclusions and build an "accurate and logical bridge" from the evidence to those conclusions. *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011).

If the medical evidence regarding the nature and extent of Claimant's limitations changes with the addition of a recent and substantive opinion from Claimant's treating physician, the RFC will require reformulation on remand. Although the record at this stage contains no opinion more restrictive than the RFC, which would have been a fact "illuminating and persuasive on its face," *Castile v. Astrue,* 617 F.3d 923, 930 (7th Cir. 2010), this may change once Claimant's treating physician is given the opportunity to document Claimant's functional capacity. On remand, the ALJ should take another look at Claimant's impairments and specifically take note of the two primary symptoms Claimant argues were not adequately addressed: worsening joint pain in his hands and fingers, [ECF No. 10] at 8, and his postural limitations. [ECF No. 10] at 9. The ALJ should also, of course, engage in a narrative discussion that adequately explains how her conclusions were reached, and in doing so, built an "accurate and logical bridge" from the evidence to her conclusion that Claimant could perform work consistent with the RFC provided. *Scott,* 647 F.3d at 740.

### IV. The VE's Testimony Regarding Other Work Available to Claimant was Supported by the VE's Experience and Evidence in the Record

At step five, the ALJ must identify the types of jobs Claimant could perform notwithstanding his disabilities, as well as ascertain whether that type of work "exists in significant numbers in the national economy." 20 CFR §§ 404.1560(c)(1), 416.960(c)(1); §§ 404.1566, 416.966. As often occurs at this stage, the ALJ sought the opinion of an independent vocational

15

expert, Lee O. Knutson. After hearing Mr. Knutson's testimony, the ALJ concluded that Claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. This reliance was, according to Claimant, unreasonable and misplaced, as Claimant asserts that the VE's testimony was "either fabricated or inaccurate." Claimant's Memorandum [ECF No. 10] at 14.

According to Claimant, the VE lacked specific sources for his job numbers or, at least, failed to produce them when asked during cross examination. Claimant's Memorandum [ECF No. 10] at 14. Claimant further takes issue with the fact that the VE based some of his estimates on "his own opinion" and "work experience in the field of vocational rehabilitation." Claimant's Memorandum [ECF No. 10] at 14. These deficiencies, Claimant argues, resulted in testimony from the VE that contradicted several vocational sources and was otherwise inaccurate. However, because it is within the sound discretion of the ALJ to determine the weight to be given to the vocational expert's testimony, whether or not the expert provides underlying data, the Court finds that the ALJ did not err in determining that the VE's testimony was credible in this case. Although the need for supplemental VE testimony may be required upon reformulation of the RFC, a likelihood described above in Section III, the methodology and conclusion drawn by Mr. Knutson based on the RFC before him at the time was sound and bears discussion to the extent it will inform the ALJ's analysis on remand.

When offering testimony, vocational experts "may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Biestek,* 139 S. Ct. at 1152-53 (citing Social Security Ruling, SSR 00–4p, 65 Fed. Reg. 75760 (2000)). A vocational expert is not categorically required to produce his supporting data; "[i]nstead, the factfinder should evaluate

16

the vocational expert's testimony, including his failure to produce the data, and determine whether the testimony is reliable." *Krell v. Saul*, 931 F.3d 582, 586 (7th Cir. 2019). Considering the totality of his testimony, the expert can be deemed credible even if he provides no underlying data. The ALJ makes such determinations on a case-by-case basis. *Biestek*, 139 S. Ct. at 1157.

Mr. Knutson has served as a vocational expert in SSA proceedings since 1993 and has had over forty years of combined education and experience in the field of vocational rehabilitation. (R. 347). As the ALJ noted, Mr. Knutson has "substantial experience as a vocational rehabilitation counselor" and "extensive knowledge of the Social Security Administration's rules and regulations." (R. 13). He is, in both this Court's and the ALJ's view, a qualified vocational expert given his "expertise" and "current knowledge" of "[w]orking conditions and physical demands of various" jobs, "[k]nowledge of the existence and numbers of [those jobs] in the national economy," and "[i]nvolvement in or knowledge of placing adult workers[ ] with disabilities[ ] into jobs." SSA, Hearings, Appeals, and Litigation Law Manual I–2–1–31.B.1 (June 16, 2016).

Mr. Knutson testified in his capacity as an independent vocational expert at Claimant's hearing on April 13, 2017. (R. 59-68). At that time, Mr. Knutson testified that there are sedentary, unskilled jobs available in the national economy that Claimant could perform with his limitations; for example, as an assembler, weight tester, or order clerk. (R. 60-61). Out of the 1.8 million assembler jobs available nationally, Mr. Knutson estimated that between 5-10% of those jobs are sedentary and unskilled, arriving at a conservative estimate of 90,000 available assembler jobs that Claimant could perform without additional limitation. (R. 60-61). Taking into account Claimant's limitation that he frequently can handle and finger bilaterally, and use a cane to ambulate, Mr. Knutson reduced his estimate of available jobs by half, to 45,000 available assembler jobs that Claimant could perform. (R. 61-62). As flushed out in detail during cross-examination, Mr.

Knutson based these numbers on both his knowledge and experience in the field and the Dictionary of Occupational Titles. (R. 62). Publicly available data from the Bureau of Labor Statistics, he explained, does not break down how many of the 1.8 million assemblers are sedentary or working with other limitations. (R. 62). Instead, to arrive at that percentage, Mr. Knutson relies on his own surveys of job trends, the DOT, and his extensive knowledge and experience. (R. 62-64). As the Seventh Circuit has repeatedly explained, VEs such as Mr. Knutson are entitled to invoke a publicly available source such as the Bureau of Labor Statistics, as well as information obtained directly from employers' and data otherwise developed from his own 'experience in job placement or career counseling.'" *Biestek,* 139 S. Ct. at 1152-53.

Despite this established law, Claimant continued to object to Mr. Knutson's testimony even several days after the hearing, alleging that Mr. Knutson "completely fabricated the number he alleged exist [sic]" and that "he only had to provide one piece of paper to support his base number in for his opinions and he was not required to do that." (R. 354). Claimant's counsel also noted that while Mr. Knutson testified that the employment data he referenced from the Bureau of Labor Statistics was publicly available, "VE's repeatedly state that the information is on website [sic]" but he has "never been able to verify the information that the VE's testify exist." (R. 352). The Court readily, however, located the 2015 Occupational Employment Statistics referred to by the Mr. Knutson on the Bureau of Labor Statistics website and observed, consistent with the VE's testimony, that 1,800,410 jobs were available in the national economy in 2015 for "Assemblers and Fabricators" as defined by SOC 51. https://www.bls.gov/oes/tables.htm; *see also,* https://www.bls.gov/oes/special.requests/oesm_15nat.zip (last accessed May 11, 2020).

Because Mr. Knutson properly relied on publicly available sources and data obtained from his own forty years of experience in job placement or career counseling in testifying to the type

18

and number of jobs available in the national economy for a person with Claimant's limitations, the ALJ did not err in finding Mr. Knutson's testimony credible. It was not improper for her to rely on it in forming her opinion that Claimant was capable of performing work consistent with the RFC articulated in her opinion. To the extent Mr. Knutson's testimony remains unchanged, or he uses the same methodology upon rehearing, the Court finds no error in his analysis.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, the ALJ's decision that Claimant is not disabled and not entitled to SSI is remanded for further proceedings consistent with this Opinion and Order. On remand, the ALJ is directed to re-contact Dr. Kokebie, ask her to find out whether the functional capacity evaluation was completed, and if it was not, give Dr. Kokebie an opportunity to provide a substantive opinion as to Claimant's functional limitations and the nature and extent of his disability or to effectively have that evaluation performed by another medical professional at her request as she apparently intended would occur. The ALJ is further instructed to reconsider her credibility determination of Claimant's testimony and reformulate the RFC in light of whatever information is obtained from Claimant's treating physician, consistent with the recommendations in this Memorandum Opinion and Order. Accordingly, Claimant's Motion for Summary Judgment [ECF No. 9] is granted in part and the Commissioner's Motion for Summary Judgment [ECF No. 23] is denied in part.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 4, 2020